UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| PATRICIA S. GREEN | ) | |
| | ) | |
| v. | ) | NO. 2:04-CV-63 |
| | ) | |
| PINNACLE CARE CORPORATION | ) | |
| OF NASHVILLE d/b/a MARINER | ) | |
| HEALTH OF NEWPORT | ) | |
| | ) | |

**MEMORANDUM OPINION**

The plaintiff's retaliatory discharge complaint is before the Court to address the Motion for Partial Summary Judgment filed by the defendant. [Doc. 46].

I. **FACTUAL BACKGROUND:**

Viewing the facts in the light most favorable to the plaintiff, the following sets forth the background of this dispute:

The plaintiff filed this action contending she was terminated in retaliation for refusing to remain silent about and/or refusing to participate in "illegal activity" in violation of the Tennessee Human Rights Act, *Tenn. Code Ann.* § 4-21-301 ("THRA"), the Tennessee Public Protection Act, *Tenn. Code Ann.* § 50-1-304 ("TPPA"), the Tennessee common law, and *Tenn. Code Ann.* § 68-11-903. Plaintiff further asserts claims surrounding the conduct of Administrator Douglas

Ottinger for assault and battery, negligent supervision, negligent retention and a violation of the Restatement (2d) Agency § 437. The plaintiff also asserts a Family Medical Leave Act claim ("FMLA"). The defendant seeks summary judgment on all but the FMLA claim.

The plaintiff began working for the defendant, doing business as Mariner Health of Newport ("Mariner Newport"), on April 1, 2002 as the Nurse Liaison/Admissions Manager. Though the plaintiff is a licensed practical nurse, her duties at Mariner did not include general nursing, but included responsibility for on-site patient evaluations at other facilities, outside marketing, management of the Admissions Office, and conducting weekly marketing meetings. Mariner's Newport facility is a nursing home with a primarily geriatric population. Beginning in September 2002, the administrator of the facility, and the plaintiff's supervisor, was Douglas Ottinger.

Until May of 2003, Eva Myers was employed as the admissions coordinator. Ms. Myers was responsible for some of the admissions paperwork, and assisted plaintiff in completing her responsibilities. Following Ms. Myers' termination, Jennifer Moffett was hired as the Admissions Manager effective May 12, 2003. On June 30, 2003, the plaintiff commenced FMLA leave. Upon her return on August 20, 2003, she was informed that she had been relieved of all of her

Admissions Manager responsibilities, and that Ms. Moffett would handle those responsibilities going forward. From that date forward, plaintiff's only responsibilities were that of her Nurse Liaison position, which she held through the remainder of her employment.

As part of a corporate restructuring, Mariner Newport became part of Mariner's Mid-America Region effective October 1, 2003. Prior to the restructuring, the facility was part of Mariner's Southeast Florida Region. The Mid-America Region came under the supervision and control of Regional President Butch Shelton.[1] Though Shelton only became President of the Mid-America Region effective October 1, 2003, he started assuming some the responsibilities for the region as early as September, 2003.

Sometime in September 2003, Mr. Shelton conducted budget meetings with all facilities in his region to prepare budgets for 2004. Prior to this meeting, Mariner Newport submitted a draft budget including a line item for the Nurse Liaison position which the plaintiff held. The budget meeting for Mariner

---

[1] The plaintiff alleges that whether Mr. Shelton was the Regional President in charge of the facility in which she worked was still "up in the air." However, the plaintiff provides no competent testimony for this allegation, only referring to some employee discussion as to who the new vice-president of the region would be, and to testimony of Jennifer Moffett in which Ms. Moffett indicates that she had a conversation with Mr. Ottinger in which he indicated that he did not know who the new vice-president would be in charge of the facility, and hoped that it would not be Butch Shelton. However, Ms. Moffett indicates that she does not know when this conversation took place.

3

Newport was held on September 23, 2003 and was attended by Shelton, Ottinger, the facility's director of nursing, and other individuals from the regional team. At the September, 2003 budget meeting, Mr. Shelton inquired as to why the Newport facility, which was in a rural area, had a Nurse Liaison position. At that time, Mr. Shelton decided to eliminate the Nurse Liaison position from the Newport facility, indicating that the position was unnecessary for the facility, particularly in light of the facility's low census numbers. Mr. Shelton testified that he may have asked for other opinions as to whether there was some benefit in keeping the position, but that it would have been nearly impossible for anyone to change his mind on eliminating this position.[2] [3]

Despite Mr. Shelton's decision having been made in September, a corporate decision was made to not tell the plaintiff until December 1, 2003. Despite that

---

[2] The plaintiff, in her response, alleges that the final decision as to who remained employed at Mariner's facility in Newport belonged to Mr. Ottinger. It is true that, Mr. Shelton testified that who remained in the remaining admissions position would be made based on the recommendation of Mr. Ottinger and the regional vice president, with input from the district and regional sales team, but only if there was a question of ability. Nevertheless, the undisputed facts reflect that Mr. Shelton made the decision to eliminate the Nurse Liaison position, and the position was held by the plaintiff. Of course, in order to retain plaintiff at the facility, the defendant would have been required to terminate another employee to create a position for the plaintiff.

[3] Plaintiff further alleges that Shelton was not concerned with the elimination of a specific position. The plaintiff mischaracterizes Mr. Shelton's testimony, in which he testified that during the September 2003 meeting, "I eliminated the position of Nurse Liaison."

4

corporate decision, the facility Administrator, Mr. Ottinger told the plaintiff on November 19, 2003, that her position had been eliminated and that she would be terminated.

The plaintiff alleges that Mr. Ottinger made certain discriminatory comments during her employment about not wanting to admit certain potential residents to the facility, and that she objected to some of his statements, declaring them to be discriminatory or illegal in some manner. The incidents which the plaintiff alleges she protested as to discriminatory or illegal activity are set forth in plaintiff's Appendix "B" to her response. For purposes of ruling on the motion for summary judgment, the Court accepts the facts set forth in Appendix "B" as true.

Plaintiff also alleges certain tort claims against the defendant based upon Mr. Ottinger's conduct. Plaintiff's tort claims focus on an incident in which Mr. Ottinger, while demonstrating to her how she should stand during a heated conversation with a resident's family member, caused the plaintiff to fall backwards, hit the side of a desk, and hit her head on a wastebasket. Plaintiff also contends that she was afraid of Mr. Ottinger based on his interest in and discussion about firearms.

II. **STANDARD OF REVIEW:**

Summary judgment is appropriate when "there is no genuine issue of material fact." *Fed.R.Civ.P.* 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the plaintiff because she is the litigant opposing summary judgment. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott*,

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). See also *Eastman Kodak v. Image Technical Services*, 504 U.S.

6

451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir.1994). (emphasis added)

*Id*. at 871.

### III. **DISCUSSION:**

    A. Plaintiff's Claims for Retaliation Under the THRA, TPPA, and Common Law:

To establish a *prima facie* case under the Tennessee Human Rights Act ("THRA"), the plaintiff must prove the following:

(1) The plaintiff engaged in a protected activity;
(2) The exercise of the plaintiff's protected civil rights was known to the defendant;
(3) The defendant thereafter took an employment action adverse to the plaintiff; and
(4) That there was a causal connection between the protected activity and the adverse employment action.

*Newsom v. Textron Aero Structures*, 924 S.W. 2d 87,96 (Tenn. Ct. App. 1995); *See Tenn. Code Ann*. § 4-21-301.

For plaintiff to establish a *prima facie* case under the Tennessee Public Protection Act ("TPPA"), the plaintiff must prove:

(1) The plaintiff's status as an employee of the defendant;
(2) The plaintiff's refusal to participate in, or to remain silent about illegal activities;

7

(3) The employer's discharge of the employee;
(4) An exclusive causal relationship between the plaintiff's refusal to participate or to remain silent about illegal activities and the employer's termination of the employee.

*Merryman v. Central Parking System, Inc.*, 1992 W.L. 330404, *6 (Tenn. Ct. App. 1992).

The elements of a common-law retaliatory discharge claim are:

(1) That an employment at-will relationship existed;
(2) That the employee was discharged;
(3) That the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional statutory or regulatory provision; and
(4) That a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

*Crews v. Buckman Labs, Int'l., Inc.*, 78 S.W. 3d 852, 862 (Tenn. 2002).

In arguing that the plaintiff cannot establish a *prima facie* case as to any of her retaliatory discharge claims, the defendant submits that the plaintiff has not set forth sufficient evidence to establish a causal connection between her alleged protected activity and her termination. In order to establish a claim under the TPPA, the plaintiff must prove an exclusive causal connection between the

8

protected activity and her termination. The plaintiff must prove that her protected activity was a substantial motivating factor in her termination for her THRA and common law claims. Obviously, the "exclusive" requirement of the TPPA is a more onerous standard, and therefore, if a defendant is entitled to judgment on the THRA and common law claims, it would be also entitled to judgment on the TPPA claim.

The plaintiff admits she has no direct evidence of retaliation. Instead, the plaintiff attempts to create a causal connection between her alleged protected activity and her termination, due to the fact that just one day prior to being informed her job was being eliminated, she objected to Mr. Ottinger's refusal to admit an individual who was 25 years old. The plaintiff claims that she told Mr. Ottinger that he could not refuse the referral because it would be age discrimination. However, regardless of the time frame involved, it is undisputed that Mr. Shelton, who made the decision to eliminate plaintiff's position, did not have any knowledge of the plaintiff's alleged protected activity two months earlier when he made the decision to abolish her position. Further, the undisputed facts in the record before this Court establish that the decision to eliminate the Nurse Liaison position was made in September, 2003, well before the plaintiff's alleged protected activities in November, 2003.

9

Case 2:04-cv-00063   Document 106   Filed 06/16/05   Page 9 of 13   PageID #: 53

In an effort to create a dispute of fact about whether Mr. Shelton actually made the decision to terminate her employment, or if the decision was actually made by Mr. Ottinger, the plaintiff points to the fact that Ms. Moffett assumed some of the plaintiff's responsibilities after the Nurse Liaison position was eliminated. The plaintiff has failed to present any material evidence that would establish that Mr. Otttinger was actually the decision maker. At most, Mr. Ottinger could have taken steps to attempt to change Mr. Shelton's mind about the elimination of the Nurse Liaison position. His failure to do so does not amount to retaliatory discharge. Likewise, the fact that another employee assumed many of her duties does not establish a causal connection. The elimination of a position meant that the company wished to employ some cost saving measures, but does not necessarily mean that the company believed it could then operate without some of the plaintiff's responsibilities still being performed.[4]

The plaintiff also makes much of the fact that the budget for 2004 had not been finalized at the time she was terminated. The Court fails to see how this establishes any causal connection since Mr. Ottinger and the other employees responsible for preparing the budget had already been put on notice in September

---

[4] There is likewise no merit to plaintiff's suggestion that Ottinger should have fired another employee to create a position for the plaintiff. *See, Barnes v. Gen Corp. Inc.*, 896 F. 2d 1457 (6th Cir. 1990).

10

of 2003 that the Nurse Liaison line item should not be in their 2004 budget.

Since the plaintiff has failed to set forth sufficient facts to establish that her termination resulted from engaging in a protected activity, the plaintiff's claims for retaliatory discharge shall be **DISMISSED**. Given the Court's ruling, the Court need not address the defendant's other argument on the plaintiff's *prima facie* case, nor the defendant's argument that the plaintiff has failed to show that the defendant's legitimate non-discriminatory reason for her termination was pretext.

B.      Plaintiff's *Tenn. Code Ann.* § 68-11-903 Claim:

*Tenn. Code Ann.* § 68-11-903 provides that no nursing home may retaliate or discriminate against someone who complains to an entity operating under a contract with an agency of the government which has responsibility for protecting the rights of residents of nursing homes. The defendant submits that because the statute does not specifically provide a private right of action for violations of the statute, the plaintiff has failed to state a cause of action under the statute for retaliation against her for her complaints about the treatment of residents or potential residents. No Tennessee or federal case has addressed the existence of a private cause of action under § 68-11-903. Nevertheless, for the reasons set forth

11

in the Court's analysis of the plaintiff's retaliation claims under the THRA, TPPA, and common law, the plaintiff's claim must fail, since any cause of action that might exist under § 68-11-903 would necessarily require plaintiff to show a causal connection between the retaliation and her complaint to the nursing home. Accordingly, the Court need not address whether a private cause of action exists under § 68-11-903, and the plaintiff's claim under *Tenn. Code Ann.* § 68-11-903 will be **DISMISSED**.

C.  Plaintiff's Tort Claims :

The plaintiff's tort claims are all based upon the alleged misconduct of Mr. Ottinger, an employee of Mariner Newport. The Tennessee Workers' Compensation Statute provides employees with the exclusive remedy for injuries occurring in the workplace as the result of a employer's negligence. *Tenn. Code Ann.* § 50-6-108; *Ridings v. Ralph N. Parsons Co.*, 914 S.W. 2d 79, 81 (Tenn. 1996). Only where there is proof of an actual intent on the part of the employer to injure the employee may the employee avoid the exclusive remedy provisions of the Workers' Compensation Act. *Williams v. Smith*, 435 S.W.2d 808 (1968). The plaintiff has set forth absolutely no competent proof that her employer (as opposed to Mr. Ottinger) acted intentionally to cause her injury. Accordingly, she cannot

12

avoid the bar of the Workers' Compensation Statute, and her tort claims shall be **DISMISSED.** Given the dismissal of her tort claims, the Court need not address the existence of a claim for violation of the Restatement (Second) Agency § 437, since the claim is likewise barred by the exclusivity provision of the Workers' Compensation Statute.

An order in consistent with this opinion shall enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE